STATE OF NORTH CAROLINA v. DIXON LOCKLEAR

No. 111

(Filed 24 January 1978)

1. **Criminal Law § 138.6— sentencing of defendant—basis**

    The record does not support the conclusion of the Court of Appeals that the trial judge improperly relied, either partially or solely, on "unsolicited whispered representations" or "rank hearsay" in sentencing defendant.

2. **Criminal Law § 102.5— cross-examination of witness—district attorney's comment on veracity—defendant prejudiced**

    The district attorney's remarks to a witness during cross-examination that "you are lying through your teeth and you know you are playing with a perjury count" were grossly improper and should have been suppressed by the court *ex mero motu.*

3. **Constitutional Law § 32— right of defendant to fair trial**

    Every person charged with a crime has an absolute right to a fair trial, that is, a trial before an impartial judge and an unprejudiced jury, and it is the duty of both the court and the prosecuting attorney to see that this right is sustained.

4. **Criminal Law § 102— prosecuting attorney—proper conduct**

    Prosecuting attorneys owe honesty and fervor to the State and fairness to the defendant in the performance of their duties.

5. **Criminal Law § 102— conduct of counsel—expression of beliefs not based on evidence—impropriety**

    Language may be used consistent with the facts in evidence to present each side of the case, but counsel may not, by argument or cross-examination,

place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs and personal opinions not supported by the evidence.

6. **Criminal Law § 102.5— attorney's comment on witness's veracity — impropriety**
   It is improper for a lawyer to assert his opinion that a witness is lying.

Justice EXUM concurring.

APPEAL by the State from decision of the Court of Appeals, 34 N.C. App. 37, 237 S.E. 2d 289 (1977), vacating judgments of *Canaday, J.,* 19 October 1976 Criminal Session, ROBESON Superior Court, and remanding for resentencing. We allowed defendant's petition for discretionary review of other portions of the decision of the Court of Appeals upholding his conviction.

Defendant was tried upon a bill of indictment charging him with felonious possession of 24.1 grams of marijuana with intent to sell and deliver, and with sale and delivery of the same 24.1 grams of marijuana. A jury returned verdicts of guilty on both charges, and defendant was sentenced to consecutive five-year terms of imprisonment.

The State's evidence consists principally of the testimony of Max Boliek, an agent of the North Carolina Board of Alcoholic Control temporarily assigned to the Robeson County Sheriff's Department as an undercover agent for the purpose of seeking out and purchasing illicit drugs.

Agent Boliek testified that on 22 April 1976 he went to the residence of Clarence Leonard and asked about purchasing some marijuana. According to Boliek, Leonard responded that he had no marijuana but knew someone named Dixon who did. Boliek and Leonard drove to defendant's home. Boliek gave Leonard twenty dollars, and Leonard walked around to the back of defendant's residence while Boliek remained in the car. Several minutes later Leonard and defendant walked back to Boliek's car. Leonard was carrying a bag of marijuana which he handed to Boliek. Boliek inspected the marijuana and complained about its apparent quality. At this time, Boliek testified, the defendant took the bag of marijuana, examined it, and said: "Hey, man, you don't have to take it, but—you don't have to buy it if you don't want it. There's no trash in that pot. It's just like all the other I got and I haven't had any complaint."

The State also offered expert testimony that the bag sold to Agent Boliek contained 24.1 grams of plant material, approximately 80 percent of which was marijuana.

Defendant offered the testimony of Clarence Leonard. Leonard stated he had the marijuana concealed in his sock at the time he and Boliek began their drive to defendant's residence. Leonard also testified that Boliek and defendant did not converse with one another and that defendant did not take the bag of marijuana from Boliek, examine it, or otherwise handle it.

Defendant Dixon Locklear testified that Clarence Leonard came to his house on 22 April 1976; that Leonard stated he wanted to sell some marijuana to Boliek but did not want to consummate the sale at his own residence; that he observed Leonard take the bag of marijuana from his sock while both of them were behind defendant's residence and out of Boliek's presence; and that he did not take the marijuana from Boliek, examine it, or make any statement concerning its quality.

Other matters necessary to an understanding of the questions discussed will be narrated in the opinion.

*Rufus L. Edmisten, Attorney General; Jane Rankin Thompson, Associate Attorney, for the State of North Carolina.*

*James D. Little, attorney for defendant.*

HUSKINS, Justice.

[1] After verdict and before sentencing, the State examined a deputy sheriff who testified, over defendant's objection, that an unnamed reliable informant had told the witness he had purchased marijuana from defendant on many occasions and that defendant was "doing between $500 and $1,000 worth of grass a week." Following pre-sentencing statements by defense counsel and the district attorney, the trial court said:

> "I cannot conclude that this is an appropriate case for probation. And it does seem to me that the testimony of Leonard lacks plausibility. It's just not plausible to me that he would sell a quantity of marijuana at no profit. It just lacked plausibility. He may be telling the entire truth, but it didn't strike me as so, and there is some indication of some collusion for the purpose of this trial."

The court then found that defendant would not benefit from sentencing as a committed youthful offender under G.S. 148-49.4 (repealed effective 1 October 1977 and replaced by G.S. 148-49.14) and imposed consecutive five-year prison terms.

On appeal, the Court of Appeals apparently concluded that the sentences were based solely on "unsolicited whispered representations" or "rank hearsay" and, for that reason, vacated the sentences and remanded the cause for resentencing. The State appealed from that holding and we allowed defendant's petition for discretionary review of his assignments based on alleged errors in the trial. We first consider and dispose of the State's appeal.

We hold that the record does not support the conclusion that Judge Canaday improperly relied, either partially or solely, on "unsolicited whispered representations" or "rank hearsay" in sentencing defendant. The fallacies and inconsistencies of the decision of the Court of Appeals on that point are accurately depicted by Judge Morris in her dissenting opinion and need not be repeated here. It suffices to say that trial judges have a broad discretion, and properly so, in making a judgment as to proper punishment. They must not be hampered in the performance of that duty by unwise restrictive procedures. The following excerpt from *State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962), is controlling:

"In our opinion it would not be in the interest of justice to put a trial judge in a straitjacket of restrictive procedure in sentencing. He should not be put in a defensive position and be required to sustain and justify the sentences he imposes, and be subject to examination as to what he has heard and considered in arriving at an appropriate judgment. He should be permitted wide latitude in arriving at the truth and broad discretion in making judgment. Pre-sentence investigations are favored and encouraged. There is a presumption that the judgment of a court is valid and just. The burden is upon appellant to show error amounting to a denial of some substantial right. *State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342. A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, cir-

cumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play."

*Compare State v. Swinney,* 271 N.C. 130, 155 S.E. 2d 545 (1967), where the trial judge by his own pronouncement clearly demonstrated that he imposed sentence for a cause not embraced within the indictment.

The decision of the Court of Appeals vacating and remanding the cause for resentencing is reversed.

We now turn to the issues raised by defendant's assignments of error.

Defense witness Clarence Leonard testified that the marijuana which Agent Boliek purchased did not come from defendant. Rather, he said that he himself had purchased the marijuana the preceding day at a pool hall, and that it was he who sold the drug to Boliek. The following exchange then took place during Leonard's cross-examination by District Attorney Britt:

"Q. Give me the names of a few that were in the pool room when you made this purchase.

Sir?

A. I don't know. I just know them by the nicknames.

Q. Give me the nicknames, then.

Sir? Give me the nicknames. Who are they?

Clarence, you are lying through your teeth and you know you are playing with a perjury count; don't you?

A. I ain't lying.

Q. What?

A. I ain't lying.

Q. Who did you buy it from, then?

A. I don't know them by name.

Q. Give me their nicknames.

A. I don't know the dude I bought it from nickname either.

Q. What did he look like?

A. He was about six feet tall.

Q. Now, think fast, Leonard. Think up a good story while you are up there.

MR. SMITH: Object. Move to strike the Solicitor's comments.

THE COURT: Yes. Motion allowed. Ladies and Gentlemen, disregard the last statement of the District Attorney. Don't consider that."

[2] Defendant contends the district attorney's assertion that "you are lying through your teeth and you know you are playing with a perjury count" constitutes an absue of privilege and is so highly prejudicial that a new trial is required. The State contends defendant failed to interpose timely objection and is therefore deemed to have waived it.

The quoted remarks of the district attorney were grossly improper and calculated to prejudice the jury. Counsel for the defendant should have objected as soon as the improper comments were uttered. This was not done, and such a failure is ordinarily held to constitute a waiver. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975); *State v. Sanders*, 276 N.C. 598, 174 S.E. 2d 487 (1970); *State v. Edwards*, 274 N.C. 431, 163 S.E. 2d 767 (1968); *State v. Peele*, 274 N.C. 106, 161 S.E. 2d 568 (1968). Even so, where, as here, the impropriety is gross "it is proper for the court even in the absence of objection to correct the abuse *ex mero motu. State v. Smith*, 240 N.C. 631, 83 S.E. 2d 656 (1954)." *State v. Monk*, 286 N.C. 509, 516, 212 S.E. 2d 125, 131 (1975). *Accord, State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967).

Disciplinary Rule 7-106 of the North Carolina State Bar Code of Professional Responsibility, 283 N.C. 783 at 837 (1973), provides in pertinent part as follows:

"DR 7-106 Trial Conduct.

\*     \*     \*     \*

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

* * * *

(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

(4) *Assert his personal opinion* as to the justness of a cause, *as to the credibility of a witness,* as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein." (Emphasis added)

The Disciplinary Rules embodied in the Code of Professional Responsibility set forth the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action and are binding on all lawyers practicing law within the State, including prosecuting attorneys. "Within the framework of fair trial, the Disciplinary Rules should be uniformly applied to all lawyers, regardless of the nature of their professional activities." 283 N.C. at 785.

The American Bar Association's suggested Standards Relating to the Prosecution Function are specifically addressed to the conduct of prosecuting attorneys in the performance of their duties. Section 5.8(b) of these suggested standards provides: "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." ABA Project on Standards for Criminal Justice, *Standards Relating to the Prosecution Function and Defense Function* 126 (Approved Draft 1971).

Many decisions of this Court have spelled out in meticulous detail what is permitted and what is prohibited by way of examination, cross-examination and argument in the trial of cases. *E.g., State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Miller,* 288 N.C. 582, 220 S.E. 2d 326 (1975); *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572, *vacated on other grounds,* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873 (1972); *State v. Conner,* 244 N.C. 109, 92 S.E. 2d 668 (1956); *State v. Phillips,* 240 N.C. 516, 82 S.E. 2d 762 (1954). We are not

disposed to write another treatise on the subject. The following basic concepts expressed in these decisions must be observed in the courts of this State:

[3] 1. Every person charged with a crime has an absolute right to a fair trial. This means that "he is entitled to a trial before an impartial judge and an unprejudiced jury in keeping with substantive and procedural due process requirements of the Fourteenth Amendment. [Citations omitted] It is the duty of both the court and the prosecuting attorney to see that this right is sustained. [Citations omitted] To these ends there are rules of practice and decorum with which all counsel involved in the trial of criminal cases must abide." *State v. Britt, supra* at 710, 220 S.E. 2d at 290.

[4] 2. Prosecuting attorneys owe honesty and fervor to the State and fairness to the defendant in the performance of their duties. *State v. Stegmann*, 286 N.C. 638, 213 S.E. 2d 262 (1975); *Berger v. United States*, 295 U.S. 78, 79 L.Ed. 1314, 55 S.Ct. 629 (1935). They should prosecute the State's case with earnestness and vigor and use every *legitimate* means to bring about a just conviction. They should not be so restricted as to discourage a vigorous presentation of the State's case to the jury. *State v. Westbrook*, supra.

[5] 3. Language may be used *consistent with the facts in evidence* to present each side of the case, *State v. Monk, supra*, but counsel may not, by argument or cross-examination, place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs and personal opinions not supported by the evidence. *State v. Noell*, supra; *State v. Phillips*, supra; *State v. Dockery*, 238 N.C. 222, 77 S.E. 2d 664 (1953). A cross-examination by which the prosecutor places before the jury inadmissible and prejudicial matter is highly improper and, if knowingly done, unethical. *State v. Britt, supra; State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971); *State v. Phillips, supra*; Disciplinary Rule 7-106(C), North Carolina State Bar Code of Professional Responsibility, 283 N.C. 783, 837 (1973).

[6] 4. It is improper for a lawyer to assert his opinion that a witness is lying. "He can argue to the jury that they should not believe a witness, but he should not call him a liar." *State v. Miller*, 271 N.C. 646, 659, 157 S.E. 2d 335, 345 (1967). *Accord, State v. Thompson*, 278 N.C. 277, 179 S.E. 2d 315 (1971). *Compare, State v. Noell*, supra.

[2] Application of these principles to the present case compels the conclusion that the district attorney's remarks were grossly improper and should have been suppressed by the court *ex mero motu*. Whether the court is obliged to act immediately when the impropriety occurs or wait and correct the transgression in its charge to the jury is ordinarily left to the discretion of the judge. Yet, even absent an objection, "it may be laid down as law, and not merely discretionary, that where the counsel *grossly* abuses his privilege, to the manifest prejudice of the opposite party, it is the *duty* of the judge to stop him then and there. And if he fails to do so, and the impropriety is gross, it is good ground for a new trial." *Jenkins v. Ore Co.*, 65 N.C. 563, 564-65 (1871). *Accord, State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967); *Massey v. Alston*, 173 N.C. 215, 91 S.E. 964 (1917); *State v. Davenport*, 156 N.C. 597, 72 S.E. 7 (1911).

It is fair to say that improper suggestions, insinuations and assertions of personal knowledge by the prosecuting attorney ordinarily "carry much weight against the accused when they should properly carry none." *Berger v. United States, supra. Accord, State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971). Consequently, the prosecutor may not determine matters of credibility and announce the result in open court—that is the jury's prerogative. The district attorney's private opinion that defendant's witness Leonard was lying "was a step out of bounds." *State v. Thompson*, 278 N.C. 277, 179 S.E. 2d 315 (1971). In the present case this flagrant disregard of well-defined rules resulted in manifest prejudice to defendant and consequently a new trial is required.

It is the responsibility of the trial judge to maintain a courtroom atmosphere and decorum appropriate to judicial proceedings. He should intervene, on his own motion if necessary, in cases of flagrant and prejudicial misconduct of counsel. If counsel's misconduct is in wilful violation of the court's rulings and instructions, exercise of the contempt powers may be appropriate. See G.S. 5-1 and 5-8(1). All lawyers are officers of the court and subject to its lawful orders as well as to the provisions of the North Carolina State Bar Code of Professional Responsibility.

We deem it unnecessary to discuss the remaining assignments of error since the matters giving rise to them may not recur on retrial.

On State's Appeal — Reversed.

On Defendant's Appeal — New trial.

Justice EXUM concurring.

I recognize that part of conventional judicial wisdom is the notion that trial judges ought to have the broadest possible discretion in sentencing a convicted criminal defendant and that this notion is presently embodied in our case law and statutes on the subject. *See, e.g., State v. Pope*, 257 N.C. 326, 126 S.E. 2d 126 (1962), relied on by the majority; *see also, generally*, General Statutes, Chapter 14. I do not agree with the majority, however, that this is a "proper" notion, and I would not sustain the result here on the basis of it.

Practically unbridled sentencing discretion in the hands of judges has resulted in grossly unequal treatment by judges of defendants convicted of the same crime. *See* M. Frankel, *Criminal Sentences, Law Without Order* (Hill and Wang, 1972); L. Orland and H. Tyler, *Justice in Sentencing* (Foundation Press 1974); *Struggle For Justice*, (a report on Crime and Punishment in America Prepared for the American Friends Service Committee, Hill and Wang, 1971); J. Exum, "Criminal Sentencing—A New Approach," 27 Bar Notes 111 (Spring 1976). The time has come for the legislature to change our present approach to criminal sentencing. I do not suggest that all judicial discretion in this process be eliminated. By appropriate legislation, however, it should be greatly narrowed and more carefully channeled.[1]

Even under the present approach to criminal sentencing, the crucial question in this case is not whether the trial judge improperly relied on inadmissible hearsay, but whether, as the Court of Appeals put it, the sentencing hearing was "fair and just [and provided the defendant] with full opportunity to controvert hearsay and other representations in aggravation of punishment." The Court of Appeals concluded defendant was not accorded such an opportunity. I disagree. The adverse information, although admittedly hearsay and obviously considered by the trial judge,[2]

---

1. One approach to accomplishing this was suggested in my *Bar Notes* article last cited in the text.

2. To say that he did not consider it on this record is simply, as any trial judge knows, to shut one's eyes to the realities of the sentencing process as it is now conducted.

was brought out in open court in the presence of defendant and his counsel. Defendant had the opportunity to refute it by testifying himself, offering other witnesses or, if necessary, asking for a recess or continuance to enable him to develop an appropriate refutation. He did none of these but stood mute on the question. He did not, therefore, take advantage of the opportunities he had at the hearing. His failures in this regard do not render the hearing itself unfair or unjust. The sentence imposed, while far longer and harsher than is normally imposed under such circumstances, must, under our present sentencing procedures, be allowed to stand.