An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-313

Filed 7 January 2026

Ashe County, No. 23CR444237-040

STATE OF NORTH CAROLINA

v.

CAITLIN HOFFMAN, Defendant.

Appeal by defendant from judgment entered 30 July 2024 by Judge William A. Wood in Ashe County Superior Court. Heard in the Court of Appeals 28 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Farrah R. Raja, for the State.*

> *Joseph Gerber, for defendant-appellant.*

FLOOD, Judge.

Defendant Caitlin Hoffman appeals her conviction of misdemeanor assault on a child under the age of twelve. On appeal, Defendant argues the trial court: first, erred under North Carolina Rules of Evidence 104(b), 404(b), and 403 by allowing witness testimony concerning her behavior prior to the alleged offense; second, plainly erred by allowing an officer to improperly vouch during his testimony; and third, erred by allowing the State to use the word "assault" while questioning

witnesses. Alternatively, Defendant claims she received ineffective assistance of counsel ("IAC") and further alleges cumulative error. Upon careful review, we hold the trial court did not err by allowing witness testimony of prior bad acts, where the evidence was admitted to show an absence of mistake; did not plainly err by allowing the officer's testimony, where the testimony did not have a probable impact on the jury; and did not err by allowing the State to use the word "assault" while questioning witnesses, where the prosecutor was not stating an opinion on the matter. Finally, we conclude Defendant did not receive IAC, where she has failed to show counsel's performance was deficient, and we further conclude the trial court did not commit cumulative error.

## I. <u>Factual and Procedural Background</u>

On 29 September 2023, Defendant, working as a lead teacher of a pre-K program, took a group of nine children outside by herself to play on the playground, while Amber Rash, the assistant teacher, prepared for lunch inside. Among the group of nine children was D.C.,[1] a four-year-old boy in Defendant's class at the time. At some point, D.C. came running into the classroom, crying, and explaining to Amber that his head hurt because it had hit a brick wall after Defendant pushed him. Defendant was charged with misdemeanor child abuse and misdemeanor assault on a child under the age of twelve. The child abuse charge was subsequently dropped,

---

[1] A pseudonym is used to protect the identity of the juvenile, pursuant to N.C. R. App. P. 42.

and Defendant was found guilty of the remaining charge at district court. Defendant appealed to superior court.

On 29 July 2024, this matter came on for trial in Ashe County Superior Court. At trial, D.C. testified that, on the day of the incident, he "got in trouble" while playing with another child on the playground, and Defendant asked him to "sit down" beside a brick wall. D.C. testified he wanted to get up; when he tried to, Defendant "pushed [him] into the wall[,]" causing his head to hit a brick wall.

Amber also testified for the State at trial. The State first asked Amber to discuss the daycare's discipline policy at the time of the incident, which Amber explained was "[d]o not spank, shake, bite, pinch, push, pull, slap, or otherwise physically punish the children." Amber then testified about the events on 29 September 2023, recounting that she was inside the classroom when Defendant opened the door from outside and "asked for a washcloth, because [D.C.] had hurt his head." "He came walking in and as soon as he got to me, he said, '[Defendant] pushed me down.'" Amber then explained to the court that, right after D.C. told her this, she filled out an incident report because "[w]e fill out incident reports for anything . . . just to document so parents can know what happened, everybody signs it. It is accountability." Amber included both accounts of the events in the report, writing "[Defendant] said [D.C.] fell and [D.C.] said that [Defendant] pushed him."

Defendant included a written statement with the report. In the statement, she recounted that D.C. got in trouble on the playground; Defendant had him sit down

next to a brick wall; D.C. then became upset and "started to throw mulch at [Defendant]"; Defendant asked him to stop; and when he would not, she "bent down and put both hands gently on his hands and told [D.C.] that [she] didn't like that. He started to scream [and] flail[] out of anger" and when he "flailed[,] he hit his side right head on the brick wall."

Amber observed that, in the past, D.C. and Defendant did "not get along very well." She noted Defendant had a history of punishing D.C. beyond what was authorized under daycare policy. She specifically explained that "[D.C.] would scream sometimes. [Defendant] would yell back at him. If he got in trouble in the mornings, she would not let him have his comfort items at nap time, even though it was hours later, which is not acceptable punishment at the daycare by anyone." Overall, she explained Defendant was "very cold" to the "harder kids[,]" and that she was "not a nurturing teacher like the hugging kind."

Christina Rash, who was the assistant director of a daycare at which Defendant previously worked, also testified at trial. The trial court conducted a voir dire of Christina prior to her testifying before the jury. During voir dire, Christina explained to the court that, during Defendant's time with her previous daycare, "[w]e had five instances across eight months of harsh tone, behavior, [and] negative interaction that [Defendant] had with children." Although Christina did not witness the instances themselves, as the assistant director, she was present for each discussion with Defendant of the writeups filed and present when Defendant signed

each writeup. She noted that the instances included "[r]ough interactions, finger pointing, [and an incident in which] she played tug of war at one point with a child, being very rough."

Defense counsel objected to Christina's testimony coming before the jury under North Carolina Evidence Rule 404(b). The trial court overruled the objection, stating,

> with regard to the 404-B ruling in this case, the [c]ourt is going to find that there is sufficient evidence to show that the Defendant admitted the various 404-B acts in question. The proper 404-B evidence does serve the proper purposes that would be absence of mistake, intent or plan. It is sufficiently similar to the acts in question in that it involves acts of described as either rough or aggressive, physical acts or rough acts, I believe, toward the children in a daycare setting which is the same as we have in the case at hand. I would also add that the proper 404-B evidence is temporal and proximate to the case at hand which we're trying I believe in either 2018 and 2019, and the one we're trying I believe is 2023 which is just a few years. The facts being similar at least the circumstances of the incidents being similar.

The trial court further noted, for purposes of North Carolina Evidence Rule 403, that the probative value was not outweighed by the danger of unfair prejudice to Defendant.

The jury was brought back in, and the trial court gave the following limiting instruction:

> Evidence is about to be received tending to show that on or about 2018 or 2019 . . . Defendant engaged in certain conduct of rough or gruff behavior or interactions with children at a different daycare. This evidence is received solely for the purpose of showing plan, intent, or absence of

- 5 -

mistake in the case which we're hearing evidence in. If you believe this evidence that you're about to hear, you may consider it, but only for the limited purposes with which it has been received. You may not consider it for any other reason. In other words, you can't find . . . Defendant guilty of the current charge she's being tried for solely because of the evidence you're about to hear that occurred on that earlier occasion.

After the trial court gave the limiting instruction, Christina testified that, "over the course of the eight months [Defendant] worked with us, we did see the harsh tones, rough gestures, very gruff behavior. And it was in a variety of inside and outside the classroom, so on the playground and in the classroom, and it was noted by different employees." Christina described one particular instance in which "a child wouldn't let go of a toy," so Defendant "engaged in tug of war over a toy with the child[,]" eventually let go and the child hit their head. Christina explained Defendant had been observed engaging in jerking motions with the children, which is behavior that "seems forceful, rough, you know, not pleasant for the child[,]" like "forcefully putting them in the chair or picking them up." Christina testified Defendant was not open to taking direction and was eventually terminated for this rough type of behavior.

On cross examination, defense counsel asked:

Q. Now, you had testified that you don't think she was receptive to guidance.

A. Correct.

Q. Now, by that[,] do you mean that she would say that

what was said did not happen?

> A. No. She would not -- she did not implement things that we asked her to do, so if we said, you know, please watch your tone or please have gentle interactions, we found that it continued to be loud, sharp, rough.

In addition, Detective Jennifer DeSpain, a special victims detective with the Ashe County Sheriff's Office, testified, explaining that a child's first disclosure—an "admittance of events that have happened"—is "very important" and "usually the most accurate." Without any objection, the State inquired whether the first disclosure by a child is "the most truthful part[,]" and Detective DeSpain responded, "[y]es."

At the close of trial, the jury subsequently returned a guilty verdict, and Defendant timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review this appeal from a final judgment of a superior court pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. <u>Analysis</u>

On appeal, Defendant argues (A) the trial court erred by allowing witness testimony of her behavior prior to the alleged offense; (B) the trial court plainly erred by allowing Detective DeSpain to impermissibly vouch for the child; and (C) the trial court erred by failing to intervene *ex mero motu* when the State used the word "assault" several times while questioning witnesses in the presence of the jury. In the alternative, Defendant argues (D) Defendant received IAC, and (E) Defendant is

entitled to a new trial based on the cumulative weight of all error. We address each argument, in turn.

## A. Witness Testimony

Defendant first argues the trial court erred by allowing Christina to testify regarding Defendant's prior actions at the previous daycare. She subdivides this argument into three distinct prongs: (1) Defendant argues the trial court erred by allowing the testimony under its Rule 104(b) preliminary determination; (2) she argues the testimony constituted improper character evidence under Rule 404(b); and (3), she argues the evidence was substantially more prejudicial than probative and therefore violative of Rule 403. We disagree.

### 1. Rule 104(b)

Evidence of "other crimes, wrongs, or acts" is admissible only if offered for a proper purpose. N.C.G.S. § 8C-1, Rule 404(b) (2023). A proper purpose includes, among other things, proof of a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." *Id*. "Even if offered for a proper purpose under Rule 404(b), evidence of prior crimes, wrongs, or acts must be relevant, and such evidence is not relevant unless it reasonably tends to prove a material fact in issue other than the character of the accused." *State v. Haskins*, 104 N.C. App. 675, 679 (1991) (citation and internal quotation marks omitted). "Furthermore, the 'other crimes, wrongs, or acts' evidence is relevant only if the jury can conclude by a preponderance of the evidence that the extrinsic act

occurred and that the defendant was the actor." *Id.* Thus, "the trial court is required to make an initial determination pursuant to Rule 104(b) of whether there is sufficient evidence that the defendant in fact committed the extrinsic act." *Id.* at 679–80.

Rule 104(b) provides that, "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." N.C.G.S. § 8C-1, Rule 104(b) (2023). To make this initial determination under Rule 104(b), "the trial court must find the evidence to be substantial." *See Haskins*, 104 N.C. App. at 680. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Williams*, 307 N.C. 452, 454 (1983) (citation omitted).

Here, Defendant argues Christina's testimony should have been excluded under Rule 104(b) because there "was never a sufficient basis for finding that [Defendant] committed any of the alleged prior bad 'acts' in the first place[,]" as Christina's testimony was "a vague and generic cloud of character aspersions[,]" and Christina never personally witnessed Defendant's behavior. *Cf.* N.C.G.S. § 8C-1, Rule 602 (providing that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself").

Christina, however, testified that she learned of Defendant's prior acts from writeups detailing the incidents, was present for the counseling sessions in which these actions were discussed with Defendant, and was likewise present when Defendant signed each of these writeups. This evidence is substantial, as a reasonable mind might accept Christina's testimony as "adequate to support a conclusion" that these actions took place. *See Williams*, 307 N.C. at 454. Therefore, the trial court did not err in preliminarily determining that the evidence of Defendant's prior acts would be allowed for the jury's consideration.

### 2. Rule 404(b)

Defendant next argues Christina's testimony was offered and admitted for the improper purpose of showing Defendant's propensity to commit the alleged offense and that the prior acts were not similar enough to the act at issue in the case to warrant their admission under Rule 404(b).

When a trial court has made findings of fact and conclusions of law to support its Rule 404(b) determination, this Court looks "to whether the evidence supports the findings and whether the findings support the conclusions." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012). The trial court's legal conclusion regarding whether the evidence is covered under Rule 404(b) is reviewed de novo. *Id.* Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower court." *State v. Harris*, 276 N.C. App. 128, 131 (2021) (citation omitted).

Our Supreme Court has explained that, under North Carolina precedent, Rule 404(b) is

> a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278–79 (1990) (alterations in original). "Accordingly, evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *State v. Lloyd*, 354 N.C. 76, 88 (2001) (citation and internal quotation marks omitted) (alterations in original).

"Where, as here, an accident is alleged, evidence of similar acts is more probative than in cases in which an accident is not alleged. The need for such proof is clear." *State v. Stager*, 329 N.C. 278, 304 (1991). "The doctrine of chances demonstrates that the more often a defendant performs a certain act, the less likely it is that the defendant acted innocently." *Id.* at 305.

> The recurrence or repetition of the act increases the likelihood of a mens rea or mind at fault. In isolation, it might be plausible that the defendant acted accidentally or innocently; a single act could easily be explained on that basis. However, in the context of other misdeeds, the defendant's act takes on an entirely different light. The fortuitous coincidence becomes too abnormal, bizarre, implausible, unusual, or objectively improbable to be believed. The coincidence becomes telling evidence of mens rea.

*Id.* (citation omitted).

"In addition to the requirement that the evidence be offered for a purpose other than to show criminal propensity, the admissibility of evidence under Rule 404(b) is guided by two further constraints—similarity and temporal proximity of the acts." *Lloyd*, 354 N.C. at 88 (citation modified). "Prior acts are sufficiently similar if there are some unusual facts present in both crimes that would indicate that the same person committed them. We do not require that the similarities rise to the level of the unique and bizarre." *Beckelheimer*, 366 N.C. at 131 (internal citations and quotation marks omitted). Meanwhile, for temporal proximity, our courts have upheld the admissibility of 404(b) evidence with year-long periods between the past and present incidents. *See, e.g.*, *State v. Wilson-Angeles*, 251 N.C. App. 886, 894 (2017) (affirming admissibility of 404(b) evidence of an act that occurred approximately four years before the incident on appeal); *State v. Carter*, 338 N.C. 569, 588–89 (1994) (affirming admissibility of 404(b) evidence of a prior crime after an eight-year period). "[R]emoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident[.]" *Stager*, 329 N.C. at 307.

Here, the State had the burden to prove that Defendant pushed D.C., and D.C. did not fall into the wall by himself when Defendant "bent down and put both hands gently on his hands[.]" Christina's testimony conveyed similarities between Defendant's actions at the previous daycare and the actions to which D.C. testified. In both cases, Defendant engaged in actions that were "forceful, rough, you know, not

pleasant for the child"—the opposite of gentle. Similar to the present instance, Defendant had previously engaged in a rough tug-of-war with a child that resulted in the child bumping their head, like the roughness of the interaction with D.C. The trial court found that Christina's testimony "serve[s] the proper purposes that would be absence of mistake, intent or plan"; "is sufficiently similar to the acts in question in that it involves acts described as either rough or aggressive, physical acts . . . toward the children in a daycare setting which is the same as we have in the case at hand"; and "is temporal and proximate to the case at hand which we're trying I believe in either 2018 and 2019, and the one we're trying I believe is 2023 which is just a few years."

We conclude there is competent evidence in the Record from testimony at trial to support the findings for the proper purpose of absence of mistake and that these findings support the trial court's conclusion of law that this evidence was admissible under Rule 404(b). *See Beckelheimer*, 366 N.C. at 130. Defendant's prior actions were "relevant" and "offered for a proper purpose" of absence of mistake, such that the evidence "reasonably tend[ed] to prove a material fact in issue"—that this incident was not an accident—rather than just about "the character of the accused." *See Haskins*, 104 N.C. App. at 679. Based on this evidence, we hold that the trial court properly admitted the evidence to show lack of accident; however, we do not agree this evidence shows an intent or plan. "Although it is error to admit other crimes evidence for a purpose not supported in the evidence, the error cannot prejudice

defendant when the same other crimes evidence is admitted for a purpose which is supported in the evidence." *Id.* at 683.

### 3. Rule 403

Finally, Defendant argues that, even if this evidence was admissible under Rule 404(b), the probative value of this evidence was substantially outweighed by the danger of unfair prejudice for purposes of Rule 403.

"Whether or not to exclude evidence under Rule 403 . . . is a matter within the sound discretion of the trial court and its discretion will not be disturbed absent a showing of an abuse of discretion." *State v. McCray*, 342 N.C. 123, 131 (1995). "The test for abuse of discretion is whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218 (1986) (citation modified). This Court "is not to substitute its judgment in place of the decision maker. Rather, the reviewing court sits only to ensure that the decision could, in light of the factual context in which it was made, be the product of reason." *Id.* If the trial court did err in allowing this testimony, the defendant must also show she was prejudiced; or, in other words, that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2023).

Under Rule 403, "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C.G.S. § 8C-1,

Rule 403.

Here, the trial court found the probative value of Christina's testimony was not substantially outweighed by unfair prejudice. As noted above, "[w]here, as here, an accident is alleged, evidence of similar acts is more probative than in cases in which an accident is not alleged[,]" and "[t]he need for such proof is clear." *Stager*, 329 N.C. at 304. Where the purpose of this testimony was to show that the incident was not an accident—showing the absence of mistake—we discern the trial court's decision to allow this testimony of prior aggressiveness with children at daycare was a reasoned decision and not an abuse of discretion. *See Little*, 317 N.C. at 218. Accordingly, we conclude the trial court did not err in admitting Christina's testimony.

## B. Vouching

Defendant next argues the trial court plainly erred by allowing Detective DeSpain to testify regarding the accuracy of a child's "first disclosure." Specifically, Defendant contends this testimony was impermissible vouching. We disagree.

As an initial matter, we note Defendant conceded that she failed to preserve this issue by failing to object to Detective DeSpain's testimony. Acknowledging this, Defendant requests this Court review this issue for plain error. "In criminal trials, plain error review is available for challenges to jury instructions and evidentiary issues." *State v. Giddens*, 199 N.C. App. 115, 119 (2009), *aff'd*, 363 N.C. 826 (2010).

Plain error exists when the trial court has committed an error, and the error

is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660 (1983) (citation omitted). "Under the plain error rule, [the] defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440 (1993). When reviewing for plain error, this Court "examines the state of all the evidence except for the challenged evidence and asks whether, in light of that remaining evidence, the jury probably would have done something different." *State v. Reber*, 386 N.C. 153, 162 (2024).

Under North Carolina law, "a witness may not vouch for the credibility of a victim[,]" *Giddens*, 199 N.C. App. at 121 (citation omitted), because as our Supreme Court has explained, "[t]he jury is the lie detector in the courtroom and is the only proper entity to perform the ultimate function of every trial—determination of the truth[,]" *State v. Chul Yun Kim*, 318 N.C. 614, 621 (1986). As such, "the trial court commits a fundamental error when it allows testimony which vouches for the complainant's credibility in a case where the verdict entirely depends upon the jurors' comparative assessment of the complainant's and the defendant's credibility." *State v. Aguilar*, 292 N.C. App. 596, 601 (2024) (citation omitted).

"[A] detective or other law enforcement officer may testify as to why they made certain choices in the course of an investigation, including their basis for believing a particular witness[,]" *id.* at 602, but they may not claim the victim's testimony is "rock solid[,]" *see State v. Caballero*, 383 N.C. 464, 472 (2022). For example, in *Caballero*,

an officer—after he explained that a victim loses credibility when they "change [their] story as you suggest things"—testified that the victim in that case "stuck to her story"; "was resolute and rock solid"; "never wavered"; and "never changed what she was saying." 383 N.C. at 472. Our Supreme Court held this was impermissible vouching, reasoning that, "[i]n the context of this discussion of witness credibility, a reasonable juror could have only understood [the officer's] description of [the victim's] performance on the test of credibility that he administered to her as 'rock solid' . . . [and] should be deemed credible." *Id.* at 478. The Court, however, did not conclude the admission of this testimony was plain error "given the strength of the State's case against [the] defendant." *Id.* at 481.

Defendant argues the present "case maps on well to that language deemed to be plain error in *State v. Warden*[, 376 N.C. 503 (2020)]." In *Warden*, a child reported she had been sexually assaulted by her father. *Id.* at 505. At trial, an investigator for the Department of Social Services Child Protective Services testified, without objection, that

> part of our role is to determine whether or not we believe allegations to be true or not true. If we believe those allegations to be true, we will substantiate a case. If we believe them to be not true or we don't have enough evidence to suggest that they are true, we would unsubstantiate a case. . . . We substantiated sexual abuse naming [the father] as the perpetrator.

*Id.* at 506. The State conceded this was impermissible vouching, and the Court's "only question" was whether this testimony amounted to plain error. *Id.* at 507.

Here, assuming Detective DeSpain's testimony amounted to improper vouching, it did not rise to the level of plain error. Defendant has not shown that, absent Detective DeSpain's testimony regarding children's first disclosures, the "jury probably would have reached a different result." *Jordan*, 333 N.C. at 440. "[I]n light of that remaining evidence"—including D.C.'s testimony that Defendant pushed him, Amber's testimony that D.C. came in crying and told her Defendant pushed him, and Christina's testimony that Defendant had engaged in rough behavior with children at daycare before, resulting in one child hitting their head—Defendant has not shown the jury "probably would have done something different." *Reber*, 386 N.C. at 162.

Accordingly, we conclude the trial court did not plainly err by allowing Detective DeSpain to testify regarding the accuracy of a child's first disclosure.

### C. *Ex Mero Motu*

Defendant next argues the trial court erred by failing to intervene *ex mero motu* when the State used the word "assault" several times while questioning witnesses in the presence of the jury. Specifically, Defendant contends the prosecutor "used 'assault' in a conclusory manner, often in leading questions, to imply her personal belief in [Defendant's] guilt[.]" We disagree.

When there is no objection at trial to a jury argument, "the standard of review to determine if the trial court erred by not intervening *ex mero motu* is whether the allegedly improper argument was so prejudicial and grossly improper that it interfered with [the] defendant's right to a fair trial." *State v. Knight*, 340 N.C. 531,

561 (1995). "The impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Trull*, 349 N.C. 428, 451 (1998) (citation modified).

Our Supreme Court has explained that attorneys may use language "consistent with the facts in evidence to present each side of the case . . . but counsel may not, by argument or cross-examination, place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs and personal opinions not supported by the evidence." *State v. Locklear*, 294 N.C. 210, 217 (1978) (internal citations omitted). *Contrast State v. Jackson*, 202 N.C. App. 564, 569 (2010) (holding the prosecutor's and witnesses' use of the term "victim" when referring to the complainant was not grossly improper) *with Locklear*, 294 N.C. at 217 (holding the prosecutor's statement that "you are lying through your teeth and you know you are playing with a perjury count" was grossly improper and highly prejudicial).

Here, the State used the word "assault" six times during various points throughout the trial:

> "Can you walk us through September 29 of 2023; specifically, how you figured out that [D.C.] had been assaulted?";
>
> "And the basic gist of it is that he [D.C.] had disclosed that he had been assaulted by the Defendant?";

"And that that [first disclosure] had happened almost immediately after he [D.C.] had been assaulted?";

"And speak to a total stranger about how he [D.C] got assaulted.";

"Were you present when he [D.C.] was assaulted?"; and

"So according to you the day before this assault happened, he [D.C.] was antagonizing you further before this happened?"

Unlike the prosecutor's statements in *Locklear*, the prosecutor here did not state an opinion on the matter, but rather tracked the language of the charge itself—an assault on a child under the age of twelve—and addressed the incident "consistent with the facts in evidence" from the testimony of D.C. *See Locklear*, 294 N.C. at 217. Accordingly, we conclude the prosecutor's use of the term "assault" did not inject "h[er] own knowledge, beliefs and personal opinions" on the trial, *see id.*, and thus, the trial court did not err in failing to intervene *ex mero motu*.

## D. Ineffective Assistance of Counsel

Defendant alternatively argues that she received IAC where her trial counsel failed to object to Christina's testimony, Detective DeSpain's testimony, and the State's use of the word "assault" while questioning witnesses. We disagree.

Under the United States Supreme Court opinion in *Strickland v. Washington*, a defendant must satisfy a two-part test to show IAC:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the

- 20 -

"counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

466 U.S. 668, 687 (1984). To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]here is no reason for a court deciding an [IAC] claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Here, as explained above, Christina's testimony was admissible, the trial court did not abuse its discretion in admitting her testimony, and the State's use of the word "assault" was not prejudicial. Further, if counsel was deficient for failing to object to Detective DeSpain's testimony, as explained above, Defendant has not shown there was a reasonable probability that the outcome of the trial would have been different without Detective DeSpain's testimony. *Id.* at 694. We therefore dismiss Defendant's IAC claim.

### E. Cumulative Error

Defendant finally argues that, even if no single error independently warrants a new trial, the cumulation of all three errors requires a new trial. Defendant contends that, "[i]n a contest that centered on credibility, the three errors—character attacks, vouching, and prejudicial conclusory language—collectively operated to simultaneously unfairly diminish and attack [Defendant's] credibility and unfairly inflate and insulate the prosecuting witness D.C.'s credibility."

"Under the cumulative error doctrine, cumulative errors lead to reversal when taken as a whole they deprived the defendant of his due process right to a fair trial free from prejudicial error." *State v. Teel*, 296 N.C. App. 532, 545 (2024) (citation modified). As explained above, however, the trial court did not err or plainly err; thus, the trial court did not cumulatively err.

## IV. <u>Conclusion</u>

Upon careful review, we hold the trial court did not err by allowing witness testimony of prior bad acts, where the evidence was admitted to show an absence of mistake; did not plainly err by allowing the officer's testimony, where the testimony did not have a probable impact on the jury; and did not err by allowing the State to use the word "assault" while questioning witnesses, where the prosecutor was not stating an opinion on the matter. Finally, we conclude Defendant did not receive IAC, where she has failed to show counsel's performance was deficient, and we further conclude the trial court did not commit cumulative error.

NO ERROR.

Judges COLLINS and MURRY concur.

Report per Rule 30(e).