STATE OF NORTH CAROLINA v. BRIAN DESMOND WORTHY

No. 618A94

(Filed 6 October 1995)

**Criminal Law § 439 (NCI4th)— closing argument—interest of witness in testifying—no mischaracterization of evidence**

The prosecutor's closing argument in a first-degree murder trial that an eleven-year-old State's witness had no interest in testifying except his concern for his future safety was not a mischaracterization of the evidence or a personal opinion and was supported by the evidence where the witness's answer that he was "not really" afraid referred to talking to the police rather than to testifying against defendant; a reasonable inference that the witness was afraid of facing defendant and testifying against him could be drawn from his testimony that he had intended to spend the night with defendant, but after witnessing defendant shoot the victim, he decided to go home to his mother; and the argument simply sought to restore the credibility of the witness after his credibility had been attacked during closing argument by defense counsel.

**Am Jur 2d, Trial §§ 692 et seq.**

**Propriety and prejudicial effect of counsel's negative characterization or description of witness during summation of criminal trial—modern cases. 88 ALR4th 209.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Lamm, J., at the 4 August 1994 Criminal Session of Superior Court, Gaston County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 14 September 1995.

*Michael F. Easley, Attorney General, by R. Kendrick Cleveland, Associate Attorney General, for the State.*

*James A. Jackson, Assistant Public Defender, for defendant-appellant.*

LAKE, Justice.

At trial, the State's evidence tended to show that during the early morning hours of 5 August 1993, defendant shot and killed Robert Alan Burns. Two of defendant's friends, seventeen-year-old Brian Carroll and ten-year-old Darius Phillips, witnessed the murder. During the evening of 4 August 1993, defendant was selling crack cocaine from the yard of Brian Carroll's grandmother's house. According to Phillips, two white customers took cocaine from defendant and drove off without paying for it. After selling his drugs, defendant asked Carroll and Phillips if they wanted to ride around in defendant's Malibu. The two agreed. Defendant drove, and during the ride, defendant told Carroll and Phillips he was going to kill a white person. While driving on Franklin Boulevard, the group spotted two white males walking down the road. Defendant said he was going to "get them," but then realized a policeman was behind the car.

The trio continued to drive and eventually encountered the victim, Robert Burns, a young white male who was riding a bicycle. Defendant pulled his Chevrolet into a parking lot beside a launderette and asked the victim for directions to Camelot Apartments. The victim gave defendant the correct directions. Defendant drove down the road but then turned around and drove back up to Burns, stopped the car so the victim's bicycle was beside the driver's window, and according to witness Carroll, said, "That wasn't the right directions." Defendant pulled out a nine-millimeter handgun, and the victim said,

"Oh, no." Defendant pulled the trigger, shooting the victim once in the chest, and then drove away. According to Phillips, defendant said, "Guess what," to Burns before shooting him.

The victim dropped his bicycle in the road and ran to a nearby house where he collapsed and died on the porch.

The defendant presented evidence and elected to testify on his own behalf. According to defendant, it was Brian Carroll who urged defendant to shoot the victim. Defendant could not remember what he asked the victim concerning Camelot Apartments, but he did remember Brian Carroll saying, "Why didn't you shoot him?" as they drove away. When they returned to the victim, defendant pulled out the handgun, pointed it at the ground, told the victim to run, and shot the handgun. After he shot, he noticed the victim was leaning over. Defendant testified he panicked and drove away, not realizing the victim had been shot. Defendant admitted to selling crack cocaine, but he could not recall being cheated during a "sale."

In his sole assignment of error, defendant argues that the trial court committed prejudicial error in overruling defendant's objection to the State's closing argument that Darius Phillips had no interest in testifying except concern for his future safety. Defendant contends this argument was unsupported by the evidence and amounted to nothing more than the prosecutor's personal opinion. Accordingly, defendant argues his right to a fair trial was violated. We do not agree.

It is well settled that arguments of counsel rest within the control and discretion of the presiding trial judge. *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992); *State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986). In the argument of hotly contested cases, counsel is granted wide latitude. *Williams*, 317 N.C. at 481, 346 S.E.2d at 410. While it is not proper for counsel to "travel outside the record" and inject his or her personal beliefs or other facts not contained within the record into jury arguments, or place before the jury incompetent or prejudicial matters, counsel may properly argue all the facts in evidence as well as any reasonable inferences drawn therefrom. *State v. Monk*, 286 N.C. 509, 212 S.E.2d 125 (1975).

Additionally, as this Court has previously pointed out, "for an inappropriate prosecutorial comment to justify a new trial, it 'must be sufficiently grave that it is prejudicial error.' " In order to reach the level of "prejudicial error" in this regard, it now is well established that the prosecutor's comments must have "so

infected the trial with unfairness as to make the resulting conviction a denial of due process."

*State v. Green*, 336 N.C. 142, 186, 443 S.E.2d 14, 40 (citations omitted), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994). Moreover, "prosecutorial statements are not placed in an isolated vacuum on appeal." *State v. Pinch*, 306 N.C. 1, 24, 292 S.E.2d 203, 221, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), *overruled on other grounds by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), *and by State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995).

Defendant contends that the prosecutor's closing argument was based upon a mischaracterization of the following portion of Darius Phillips' testimony on direct examination:

Q. Why was it that you didn't tell the police officers earlier about what had happened?

A. I was. My mama was going to take me, but we forgot.

Q. Were you scared?

A. Not really.

Viewed in context, we do not believe the prosecutor's argument was improper. The prosecutor argued, in part:

But you've got to look and see what the interest of the person has in the outcome of the case . . . and whether or not that interest is such that [it] would [i]nfluence their testimony.

And what interest do you think Darius Phillips has got in the outcome of this case other than his thoughts of his possible future safety there.

[DEFENSE COUNSEL]: OBJECTION to that also, your Honor.

THE COURT: Just a minute. Objection is overruled.

[THE PROSECUTOR]: And what interest do you think Brian Carroll's got in the outcome of this case? I'll tell you the person that's got an interest [in] this case is Brian Worthy.

First, we do not subscribe to defendant's interpretation that the prosecutor mischaracterized Phillips' testimony when the prosecutor argued that Phillips' only interest in testifying was perhaps a concern

for his personal safety. Defendant would have us read the testimony to mean that Phillips was "not really" afraid of testifying at trial, and thus the prosecutor's closing argument, that Phillips' only interest in testifying was his concern for his future personal safety, twisted and mischaracterized the evidence of the case. We do not accept this interpretation and instead read Phillips' testimony in the context of the line of questioning which produced the response, i.e., whether Phillips was afraid of talking to the police. Thus, Phillips' answer "not really" meant he was "not really" afraid to talk with the police, rather than he was "not really" afraid of testifying against defendant.

Further, we cannot agree that, as contended by defendant, the record is devoid of any evidence from which it could be reasonably inferred that Darius Phillips had thoughts concerning his future safety. We note in this regard that Phillips testified that prior to the murder, he had intended to spend the night with defendant. However, after witnessing defendant shoot a man in the manner he described, Phillips decided to go home to his mother instead. Based upon this evidence, it is certainly a reasonable inference that Phillips, who at the time of trial was eleven years old, was afraid of the prospects of facing defendant and giving testimony against him. This would hardly be an uncommon emotion for any witness to such a sight, regardless of his or her age. Thus, there was no mischaracterization of testimony when the prosecutor argued that Phillips had no interest in testifying other than concerns for his future safety.

Additionally, during defendant's closing argument, he attacked the credibility of Phillips as a State's eyewitness. Defendant reminded the jury that when Phillips testified, he denied talking with the police even though he had. Defendant reminded the jury that Phillips claimed he told his mother about the shooting, but she did not believe him. Defendant rhetorically asked the jury why the State had not called Phillips' mother as a witness if Phillips really had told her about the shooting.

"[C]ounsel is allowed to respond to arguments made by defense counsel and restore the credibility of a witness who has been attacked in defendant's closing argument." *State v. Perdue*, 320 N.C. 51, 62, 357 S.E.2d 345, 352 (1987). The prosecutor's argument simply sought to shore-up Darius Phillips' credibility in the eyes of the jury after his credibility had been attacked. In context, the argument pointed out to the jury that in deciding a witness' credibility, it is important to consider why a witness might be motivated to testify in

a certain way. The prosecutor simply told the jury that Phillips had no ulterior motive or hidden agenda for testifying against defendant, thus inferring to the jury that it had no reason to disbelieve Phillips' testimony. The prosecutor then contrasted Phillips' lack of motivation to fabricate testimony with defendant's, who was faced with a first-degree murder charge and so had strong reason to fabricate testimony. Accordingly, as its full context reveals, the prosecutor's argument did not mischaracterize the testimony at trial. Rather, the argument was but a common and proper argument attempting to bolster a witness' attacked credibility.

Furthermore, even if the prosecutor's argument could, in some way, be construed as improper, defendant fails to demonstrate any prejudice. Two eyewitnesses testified defendant shot an innocent stranger and then left the scene. Only a short while earlier, defendant told both eyewitnesses he wanted to shoot a white person. His own testimony shows he was the shooter. We thus conclude that in view of the overwhelming evidence against defendant, any possible impropriety in the remark of the prosecutor was not sufficiently grave to amount to prejudicial error. This assignment of error is overruled.

For the reasons stated herein, we conclude defendant received a fair trial, free from prejudicial error.

NO ERROR.