An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-230

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

    v.

ROY DENNING HUDSON,
       Defendant.

Transylvania County
Nos. 10 CRS 925
     10 CRS 51997
     10 CRS 51999
     10 CRS 52000-01
     10 CRS 52003-08
     10 CRS 52010

Appeal by defendant from judgments entered 30 August 2012 by Judge Mark E. Powell in Transylvania County Superior Court. Heard in the Court of Appeals 9 September 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Natalie Whiteman Bacon, for the State.*
>
> *Mark Montgomery for defendant-appellant.*

GEER, Judge.

Defendant Roy Denning Hudson appeals from his convictions of two counts of first degree sex offense with a child and 10 counts of indecent liberties with a child. On appeal, defendant primarily argues that the trial court erred by failing to intervene *ex mero motu* during the prosecutor's closing argument

when, defendant contends, the prosecutor expressed a personal opinion that the alleged victim was telling the truth.

Based upon our review of the closing arguments, we find that the prosecutor's argument was responsive to defense counsel's closing argument attacking the alleged victim's credibility as a witness, asserting that the sex abuse never occurred, and suggesting the alleged child victim had been coached to falsely report the abuse. The prosecutor's closing argument presented the jury with reasons to believe the alleged victim and then argued, based on those reasons, that the jury should conclude that the victim was, in fact, telling the truth. The prosecutor did not express her personal opinion that the alleged victim was telling the truth, and, therefore, the trial court was not required to intervene.

## Facts

The State's evidence tended to show the following facts. Defendant and his wife, Judy Hudson, adopted David[1] when David was eight years old. Along with David, defendant and Ms. Hudson adopted five other children during their eight-year marriage, including their older, adopted son Anthony and David's younger

---

[1]Pseudonyms are used throughout this opinion in order to protect the identities of minor children and for ease of reading.

biological brother, Ricky. In addition, defendant and Ms. Hudson served as foster parents for roughly 20 to 30 children.

David suffered from mental delays and had been enrolled in special education classes since first grade. At 15 years old, he read at a second grade level, and he struggled with the concepts of numbers and math. He participated in the Special Olympics.

Beginning at some point when David was 10 to 12 years old, defendant began to sexually molest David. Defendant would bring David into defendant's bedroom, lay David down on the bed facing upward, pull off David's pants and underwear, and place David's legs up in the air. Defendant would then remove his own pants, touch David's penis, masturbate, and ejaculate onto David's buttocks. Defendant would smear his semen around David's buttocks, and then wipe David clean with a towel. This occurred roughly 12 or 13 times over a two-year period, all while David was 10 to 12 years old. On one occasion, David's oldest brother Anthony was present and told David that he "had to do it to join the boy's club." Defendant told David that "Anthony had to do it too." Defendant also forced David to perform fellatio on defendant five times.

Defendant told David that if David told anybody about the abuse, defendant would kill David's brother Ricky. David had

witnessed Ricky being abused in a prior home placement, and David had been unable to protect Ricky from that abuse despite trying to do so. David, similarly, tried to protect Ricky from defendant by not telling anyone about defendant's abuse.

Defendant and Ms. Hudson very rarely had sex. At some point during their marriage, defendant told Ms. Hudson he was not attracted to her, but he admitted that he masturbated on a daily basis. Defendant and Ms. Hudson separated in March 2009 and, after living briefly with defendant, David lived with Ms. Hudson. In September 2009, David disclosed to Ms. Hudson that defendant had "hurt" him and indicated masturbation to Ms. Hudson. Ms. Hudson reported the abuse and, in September 2010, David described the abuse to Kenny McAbee, the supervisor for Child Protective Services of the Transylvania County Department of Social Services.

On 15 September 2010, David also described the abuse to Detective Michael Wade Abram of the Transylvania County Sheriff's Office. Following his interview with David, Detective Abram gave Anthony his card and asked Anthony to call him, but Anthony never did. Prior to defendant's arrest, Detective Abram called defendant and left a message, but defendant did not return the detective's call.

On 21 September 2010, David described defendant's abuse to Christine Nicholson, a social worker with the Child Medical Evaluation program at Mission Children's Specialist in Asheville, North Carolina. David began seeing Polly Penland, a clinical social worker and child therapist, for treatment in October 2010. David described defendant's abuse to Ms. Penland and, during treatment, David exhibited symptoms consistent with children who have been sexually abused. Ms. Penland diagnosed David with post-traumatic stress disorder and treated him using trauma-focused cognitive behavior therapy.

On 15 November 2010, defendant was indicted for two counts of first degree sex offense with a child and 11 counts of indecent liberties with a child. Defendant testified in his own defense and denied engaging in any inappropriate sexual conduct. According to defendant, he has been unable to obtain an erection since having surgery in 2005. Defendant testified he worked long hours and was never alone with David in the house. Defendant believed that either Ms. Hudson or David's birth mother had directed David to falsely report the abuse.

Defendant also presented the testimony of his son Anthony, who denied ever witnessing defendant abuse David and testified that defendant was a loving and supportive father. Anthony was 22 years old and lived with defendant at the time of trial.

Defendant's biological daughter Sally, who lived in the house with David prior to defendant's and Ms. Hudson's separation, testified that she could not remember a time that David was ever alone with defendant at that house and that she had a good relationship with defendant. Sally continued living with defendant until a year or two prior to trial, at which point she moved in with her biological mother because she was unsure how defendant's trial would go.

Krissy Johnson, an investigator and assessor for the Harnett County Department of Social Services, testified for the defense that she made an unannounced visit to defendant's new home in Harnett County on 10 September 2010, interviewed defendant, Anthony, Sally, Ricky, and several of defendant's family members who were visiting the home, and determined there was no reason to remove any children from the home. The children all reported being happy living with defendant.

Judy Jennings, the pastor of defendant's church in Transylvania County, testified that defendant had been very involved in the church, had served as the children's church director for four or five years, and had performed background checks on people who wanted to be involved with the children's ministry. Ms. Jennings trusted defendant and had never received

any complaints about him. She thought defendant was a "great" parent.

The jury found defendant guilty of all the charges. The trial court arrested judgment on one count of indecent liberties with a child. The court sentenced defendant to two concurrent presumptive-range sentences of 192 to 240 months for the two counts of first degree sex offense with a child. These concurrent sentences were followed by three consecutive presumptive-range sentences of 16 to 20 months imprisonment for the indecent liberties with a child convictions.[2] Defendant timely appealed to this Court.

I

Defendant first argues that the trial court erred in allowing the State to present rebuttal evidence of David's character for truthfulness. Rule 608(a) of the North Carolina Rules of Evidence provides: "The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness

---

[2]Eight of the indecent liberties convictions were consolidated into a single judgment, while the court entered two separate judgments for each of the two remaining indecent liberties convictions.

for truthfulness has been attacked by opinion or reputation evidence or otherwise."

Following the close of defendant's evidence, the State disclosed its intention to call a witness to testify regarding David's character for truthfulness. Defendant objected, arguing that David's character had not been called into question at trial. The trial court overruled defendant's objection, reasoning that "evidence ha[d] been presented that might tend to show from at least one viewpoint that what [David] said [wa]s not true" and that constituted an "indirect attack on his credibility."

The State then called Charles "Mack" McKeller, David's Special Olympics soccer coach, who testified as follows:

> Q. And what is your opinion about [David's] characteristic for being truthful?
>
> A. My opinion is he is extremely truthful. He is -- he is not one to make things up if --
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: Move to strike.
>
> THE COURT: Motion is allowed.
>
> A. He is one who will ignore the question rather than say something that might not be true.

[DEFENSE COUNSEL]: Objection. Move to strike.

THE COURT: Overruled.

Q. And he has been reliable that way?

A. Very reliable that way.

Defendant argues that the trial court erred in allowing Mr. McKeller to testify to David's character for truthfulness because David's character for truthfulness "was never 'attacked' within the meaning of" Rule 608(a). As an initial matter, the State contends that defendant's argument is not preserved for appeal since defendant failed to object to Mr. McKeller's testimony that David had been "[v]ery reliable that way." However, defendant's objection outside the presence of the jury on this matter, along with defendant's objections to the two immediately preceding questions during direct examination of Mr. McKeller, was sufficient to preserve his argument for appeal. *See State v. Lawson*, 173 N.C. App. 270, 275, 619 S.E.2d 410, 413 (2005) (when defendant objected to two of three of State's questions prior to question eliciting challenged testimony, holding "defendant's pattern of objections to the hearsay testimony constituted a continuing objection to the line of questioning and therefore all of the hearsay testimony may be considered on appeal, although only part of the testimony was objected to at trial").

This Court has explained that a witness' character for truthfulness is sufficiently attacked for purposes of Rule 608(a) when the opposing party introduces evidence contrary to the witness' testimony. *State v. Marecek*, 152 N.C. App. 479, 506, 568 S.E.2d 237, 255 (2002) (holding that witness' character for truth was attacked for purposes of Rule 608(a) when witness did not testify but his pretrial statement was admitted into evidence and opposing party introduced evidence contrary to witness' statement).

In this case, defendant testified and expressly denied engaging in any inappropriate sexual conduct with David. Anthony, the brother who David testified was present during one instance of abuse, testified for the defense that the alleged incident never occurred. Sally, defendant's daughter, testified for the defense that she could not recall David and defendant ever having been alone in the house together. Accordingly, defendant's evidence contradicted David's testimony, and the trial court properly ruled that the State was permitted to introduce, on rebuttal, evidence of David's character for truthfulness.

Defendant further argues that the trial court erred in admitting the testimony because the substance of Mr. McKeller's testimony -- that David "is one who will ignore the question

rather than say something that might not be true" -- constituted evidence of specific instances of David's truthfulness since it concerned "how [David] did or might act when asked to lie." We disagree with defendant's characterization of the testimony. Mr. McKeller did not provide evidence of any specific prior incident involving David's truthfulness, but rather the testimony expressed Mr. McKeller's opinion that David generally either tells the truth or does not respond to questions at all. We, therefore, hold the trial court did not err in admitting the challenged evidence.

II

Defendant next argues that the trial court erred in failing to intervene *ex mero motu* in response to various portions of the State's closing argument. "'The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*.'" *State v. Taylor*, 362 N.C. 514, 545, 669 S.E.2d 239, 265 (2008) (quoting *State v. McNeill*, 360 N.C. 231, 244, 624 S.E.2d 329, 338 (2006)). "'Under this standard, only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing

and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.'" *Id.* (quoting *State v. Anthony*, 354 N.C. 372, 427, 555 S.E.2d 557, 592 (2001)).

Defendant first contends that the prosecutor expressed her personal opinion that David was telling the truth and that defendant was guilty when the prosecutor argued:

> [Child molesters] are everywhere. It could be anybody.
>
> It's him. It's him. The man that wants you to believe that he is such a big family man, the man with the big houses . . . .
>
> . . . .
>
> They don't make up something like this. They don't know about sexual activity. . . .
>
> . . . .
>
> He is sexually aroused by children, not adult women. All right? That's why he is not aroused and had trouble with Ms. Hudson. . . .
>
> . . . .
>
> It's not a fantasy, ladies and gentlemen. It's not just a story that he's rehearsed over and over. . . .
>
> . . . So these aren't inconsistencies, ladies and gentlemen. This is further bolstering support that it happened. That's what that means, it happened. . . . How could he pull something over like that on that many -- that many professional people?

How could he do that? He is not that savvy, ladies and gentlemen. Okay? He is not that good. He can't do that. That's because it happened. It's the truth. What he told you is the truth what happened to him.

. . . .

. . . But this wasn't some witch hunt, this wasn't some conspiracy. Judy Hudson, [David], Wade Abram, myself, Christine Nicholson, Kenny McAbee, all of these people in some conspiracy here to convict an innocent man? Absolutely not. Absolutely not. Because what [David] is saying is the truth. He is telling the truth.

N.C. Gen. Stat. § 15A-1230(a) (2013) provides: "During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." The statute specifies further, however, that "[a]n attorney may, . . . on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." *Id.*

Our Supreme Court has also explained that "'it is improper for the prosecuting attorney to express his personal opinion or belief in the guilt of the accused, unless it is apparent that such opinion is based solely on the evidence, and not on any reasons or information outside the evidence.'" *State v. Britt*,

291 N.C. 528, 538, 231 S.E.2d 644, 651 (1977) (quoting 23A C.J.S. *Criminal Law* § 1104).

We first address the propriety of the prosecutor's arguments that (1) defendant was a child molester, (2) David could not "make up" his story in this case, (3) defendant was aroused by children and not adult women, and (4) David would not be able to fool so many professional people because he was not sufficiently savvy. Each of these arguments were based on the evidence, including (1) David's testimony and his prior consistent statements when he was 13 years old that defendant molested him; (2) testimony regarding David's mental delays; (3) Ms. Hudson's testimony that defendant told her he was not attracted to her; and (4) evidence of the professional credentials of Ms. Penland, Ms. Nicholson, and Mr. McAbee, to whom David described the abuse.

Thus, even assuming, without deciding, that these statements expressed the prosecutor's personal opinion regarding David's truthfulness, each of these arguments was based on the evidence at trial and reasonable inferences drawn from that evidence. The trial court, therefore, did not err in failing to intervene *ex mero motu* in these portions of the State's closing argument. *See id.* at 537-38, 231 S.E.2d at 651 (holding prosecutor's argument that defendant was "'guilty as sin'" and

"'cold-blooded, deliberate murderer, regardless of what your decision in this case is'" was proper since it was "based solely upon evidence from which his inferences and conclusions could legitimately be inferred").

Defendant also challenges the prosecutor's assertions that David was telling the truth and that David's story was not a fantasy.  In *State v. Wilkerson*, 363 N.C. 382, 424, 683 S.E.2d 174, 200 (2009) (emphasis omitted), our Supreme Court addressed the defendant's contention that the prosecutor's closing arguments were improper when the prosecutor stated that one witness "'told the truth, and what she said is corroborated'" and, with respect to a second witness, that the prosecutor called her as a witness "because I think she's telling the truth . . . .'"  The Supreme Court held that the prosecutor's argument with respect to the first witness was not improper since "the prosecutor did not personally vouch for her veracity but instead provided jurors reason to believe [the witness] by arguing that her testimony was truthful because it was corroborated."  *Id.* at 425, 683 S.E.2d at 200.  However, the Court held that "the prosecutor's passing comment that *he believed* [the second witness] was telling the truth violated section 15A-1230(a)."  *Id.*, 683 S.E.2d at 201 (emphasis added).

Here, the prosecutor did not either say she believed David or otherwise *personally* vouch for David's veracity. Rather, like the first portion of the prosecutor's argument in *Wilkerson*, the State's references to David's telling the truth followed the State's identification of reasons that the jury should find David and his story credible. The trial court was not, therefore, required to intervene in the State's closing argument *ex mero motu*. *See also State v. Zuniga*, 320 N.C. 233, 256, 357 S.E.2d 898, 913 (1987) (finding "nothing improper" in prosecutor's argument -- "'I submit to you that those witnesses who testified on behalf of the State were telling you the truth and, yes, that includes the taxi driver, Mr. Call'" -- when argument was supported by evidence and defendant had full opportunity on cross-examination to bring out discrepancies in State's evidence).

Further, a prosecutor "'is allowed to respond to arguments made by defense counsel and restore the credibility of a witness who has been attacked in defendant's closing argument.'" *State v. Worthy*, 341 N.C. 707, 711, 462 S.E.2d 482, 484 (1995) (quoting *State v. Perdue*, 320 N.C. 51, 62, 357 S.E.2d 345, 352 (1987)). Here, the prosecutor's argument that David had told the truth was in response to defense counsel's closing argument, which was aimed in large part at discrediting David's trial

testimony and prior statements by pointing out inconsistencies between his prior statements and his trial testimony; highlighting implausible aspects of David's story; and noting all the details of the events that David was unable to provide. Defendant also argued in closing that someone had prompted David to falsely report the abuse, and David was unable to provide many specific details because those details were not given to him by the person who manufactured the story: "Perhaps . . . [David] couldn't remember the details because the events never happened at all." The prosecutor's argument was, therefore, largely responsive to defendant's closing argument and was aimed at restoring David's credibility.

Defendant nonetheless points to *State v. Smith*, 279 N.C. 163, 181 S.E.2d 458 (1971), and *State v. Locklear*, 294 N.C. 210, 241 S.E.2d 65 (1978), as establishing that the trial court, in this case, erred. In *Smith*, however, the improper arguments involved expressions of the prosecutor's *personal* beliefs about the evidence and the defendant's guilt, 279 N.C. at 165, 166, 181 S.E.2d at 459, 460, whereas, here, the arguments merely set forth a conclusion that the jury could reach from the evidence -- the conclusion that David was, in fact, telling the truth. Likewise, *Locklear* did not involve an argument regarding why a jury should, based on the evidence, find a witness was credible,

but rather addressed the prosecutor's question to a witness that "'you are lying through your teeth and you know you are playing with a perjury count; don't you?'" 294 N.C. at 214, 241 S.E.2d at 68. The State's argument in this case, because it argued the evidence, was, in contrast to *Smith* and *Locklear*, proper.

Defendant next points to the prosecutor's argument that "[defendant's] own daughter has doubts. She is living with somebody else. She doubts him too. Or maybe she knows more than she is telling." Defendant contends that this argument went outside of the evidence presented at trial.

Sally, who was 16 years old at the time of trial, testified that she had lived with defendant her entire life, but she went to live with her biological mother roughly a year or two prior to the August 2012 trial -- that is, around or after the time David first reported defendant's sex abuse in September 2010. Sally further testified as follows:

> Q. Why are you not with your dad now?
>
> A. *I'm not with my dad right now* -- honestly?
>
> Q. Yes.
>
> A. *Because I didn't know how the court was going to go*, so I was going to move in with -- *I was planning on moving in with dad this summer, but then I had my own doubts* because I know how [Ms. Hudson] is with everybody --

[PROSECUTOR]: Objection.

THE COURT: Sustained.

A.    -- in Transylvania County.

Q.    You and your dad have a good relationship?

A.    We have an amazing relationship.

Q.    Would you characterize your father as a loving father?

A.    Very much.

Q.    Has he always been there for you?

A.    He has.

Q.    Do you know he will always be there for you regardless?

A.    All the time.  I do.

Q.    Do you have any doubts at all about that?

A.    Not at all.

(Emphasis added.)

In *Worthy*, while reviewing the prosecutor's closing argument, our Supreme Court rejected the defendant's contention that the record was "devoid of any evidence from which it could be reasonably inferred that [a witness] had thoughts concerning his future safety."  341 N.C. at 711, 462 S.E.2d at 484.  The Court observed that the witness "testified that prior to the murder, he had intended to spend the night with defendant," but

"after witnessing defendant shoot a man in the manner he described, [the witness] decided to go home to his mother instead." *Id.* The Court reasoned that, based on that evidence, it was "certainly a reasonable inference that [the witness], who at the time of trial was eleven years old, was afraid of the prospects of facing defendant and giving testimony against him." *Id.*

Similarly, here, Sally's testimony -- that she lived with defendant her entire life, including after defendant's separation from Ms. Hudson, but that she went to live with her biological mother roughly at or after the time David first reported defendant's sex abuse -- permits a reasonable inference that she doubted defendant's innocence for some reason. Although defendant points to Sally's testimony that her doubts about moving in with defendant were related to Ms. Hudson, the jury could reasonably have concluded that this testimony was not credible and that Sally's change of plans were actually related to the sex abuse allegations -- the prosecutor was entitled to argue that the jury should draw that inference. As in *Worthy*, the prosecutor did not argue facts outside of the evidence presented at trial.

In his final argument related to the closing argument, defendant asserts that the trial court erred in overruling his

objection to the following portion of the prosecutor's closing argument:

> One thing [defendant] never answered, was never asked during his examination by his attorney, was why did you not return Detective Abram's phone call?  Why did you not call him back?  If you were so innocent of this crime, wouldn't the first thing you want to do is [sic] set it straight?  Say, hey, that's right --
>
> [DEFENSE COUNSEL]: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: -- I'm going to call him up and I'm going to set this straight.

Defendant argues that this portion of the closing argument violated his right to remain silent under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. However, defendant did not raise this constitutional argument before the trial court and, generally, "constitutional error will not be considered for the first time on appeal." *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005).

Even assuming, without deciding, that defendant's constitutional argument were properly before us, this Court has previously held that "if the defendant is not yet under arrest, the State may use the defendant's pre-arrest silence for impeachment purposes at trial." *State v. Boston*, 191 N.C. App. 637, 648, 663 S.E.2d 886, 894 (2008).  Here, the prosecutor's

argument was based upon Detective Abram's testimony that his call to defendant was made before defendant was arrested: "I attempted to reach [defendant] at that number before this case even came to the attention [sic] or the court had knowledge of it." Consequently, if the argument was directed at impeaching defendant's testimony, it did not violate his constitutional right to silence.

Defendant testified at trial that the alleged sex abuse never occurred, that he was never interviewed by law enforcement in connection with this case, and that, prior to trial, he never had a chance to tell his story. In his closing argument, defense counsel argued to the jury: "This was [defendant's] first time [to] tell his story. . . . Because prior to that nobody had asked his story. Nobody had wanted to know his side of the story. Not law enforcement . . . ."

Given defendant's trial testimony and his closing argument emphasizing that testimony, it is apparent that the State's closing argument was responding to counsel's argument and impeaching defendant's testimony that defendant had never had a chance to tell his side of the story. The State was simply pointing out that defendant, prior to being arrested, had been given an opportunity to talk with the police, but had chosen not to do so. The State's argument was, therefore, proper.

III

Lastly, defendant contends that the trial court erred in referring to David as "the victim" when instructing the jury regarding first degree sexual offense. Although the trial court simply gave the pattern jury instruction, defendant argues that references to "the victim" improperly suggested to the jury that the trial court believed David to be the victim of a crime.

Defendant did not object to the instructions at trial, and we, therefore, review this issue for plain error. This Court has, however, previously held that "it is clear from case law that the use of the term 'victim' in reference to prosecuting witnesses does not constitute plain error when used in instructions . . . ." *State v. Henderson*, 155 N.C. App. 719, 722, 574 S.E.2d 700, 703 (2003). We are bound by *Henderson*. Defendant has, therefore, failed to show that the trial court's instruction constituted plain error.

No error.

Chief Judge MARTIN and Judge STROUD concur.

Report per Rule 30(e).