STATE OF NORTH CAROLINA
v.
JIMMY I. JONES, Defendant

No. COA13-215

Filed 17 December 2013

**Criminal Law—referring to complaining witness as victim—no plain error—no prejudice**

The trial court did not commit plain error in a first-degree rape, second degree rape, and multiple indecent liberties case by repeatedly using the term "victim" to describe the complaining witness. Defendant failed to show he suffered any prejudice.

Appeal by defendant from judgments entered 2 May 2012 by Judge R. Allen Baddour in Orange County Superior Court. Heard in the Court of Appeals 21 October 2013.

*Roy Cooper, Attorney General, by Jill A. Bryan, Assistant Attorney General, for the State.*

*Mark Montgomery, for defendant–appellant.*

MARTIN, Chief Judge.

Defendant Jimmy I. Jones was charged in proper bills of indictment with one count of first-degree rape, two counts of second-degree rape, and eight counts of indecent liberties with a minor. He appeals from judgments entered upon jury verdicts finding him guilty of the first- and second-degree rape of his stepdaughter, as well as multiple counts of taking indecent liberties with his stepdaughter and with two of his nieces. We find no error.

**STATE v. JONES**

[231 N.C. App. 433 (2013)]

The evidence presented at trial tended to show that, from October 1975 through February 1981, defendant sexually abused his stepdaughter and two of his nieces. At trial, one niece testified that, beginning from the time that she was about seven years old, each time she visited the home that defendant shared with her aunt—which the niece visited every weekend so that her mother and aunt could rehearse for their singing group—defendant "place[d] [her] in his lap" and "would take [her] hand and touch his genitals." She also testified that, when she was nine or ten years old, defendant began regularly entering the bedroom that she shared with her cousins "in the middle of the night" and "would play with [her] genitals" by placing his fingers inside her vagina. She further testified that this abuse continued until she was about fourteen years old and stopped visiting her aunt's house.

Defendant's other niece testified that, between the ages of five and eleven years old, when she would go to visit her cousins at the home shared by her aunt and defendant, defendant would repeatedly hug her and "grind[]" his hips against hers, kissed her by putting his tongue in her mouth, and would bring her into one of the bedrooms, lay her prostrate on top of him, and "grind[]" against her hips and vagina. She further testified that, on one occasion, when she was eight or nine years old, defendant called her into the bedroom, placed her right hand onto his exposed penis, and held it there and asked her "if it felt good."

Finally, defendant's stepdaughter testified that, when she was twelve years old, on a night that her mother was away from the house, defendant took her from her own bedroom and brought her into her mother's bedroom, took off her nightgown and underwear, and had vaginal intercourse with her. She also testified that defendant took her to her mother's bedroom and had vaginal intercourse with her again when she was fourteen years old, and again when she was sixteen years old.

About twenty-five years later, in the spring of 2008, Sergeant Tina Rimmer in the Criminal Investigative Division of the Orange County Sheriff's Office received a phone call from a detective with the Durham Police Department regarding an investigation "involving [defendant] and a juvenile." The detective informed her that, through his investigation, he had received information "in reference to [defendant's two nieces] being victimized by [defendant], also," at a residence in Orange County, which was located in Sergeant Rimmer's jurisdiction. Sergeant Rimmer interviewed defendant's two nieces, who described to her the manner in which defendant had sexually abused them when they were minor children. One of the nieces also gave the sergeant a list of names of people who "could [also] be potential victims," one of whom was defendant's

stepdaughter. Without objection from defendant at trial, Sergeant Rimmer read into evidence the statements she took from defendant's stepdaughter and two nieces, which statements chronicled their abuse at the hands of defendant and corroborated the testimony of each accusing witness.

At the close of the State's evidence, defendant moved to dismiss the charge of first-degree rape and four of the eight charged counts of taking indecent liberties with a child, which motions were denied. Defendant offered no evidence and did not renew his motions to dismiss at the close of all of the evidence. The jury found defendant guilty of one count of first-degree rape, two counts of second-degree rape, and eight counts of indecent liberties with a child. The court sentenced defendant to three concurrent life sentences and two consecutive ten-year terms of imprisonment to run at the expiration of the life sentences. Defendant appeals.

---

Defendant first contends the trial court committed plain error when it charged the jury on the offenses of first- and second-degree rape by repeatedly using the term "victim" to describe the complaining witness. We disagree.

"Because our courts operate using the adversarial model, we treat preserved and unpreserved error differently. Preserved legal error is reviewed under the harmless error standard of review." *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). "Unpreserved error in criminal cases, on the other hand, is reviewed only for plain error," *id.*, which "is normally limited to instructional and evidentiary error." *Id.* at 516, 723 S.E.2d at 333. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *Id.* at 518, 723 S.E.2d at 334. "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

Defendant concedes that the court instructed the jury on the offenses of first- and second-degree rape by using the same language as that which is set forth in the North Carolina Pattern Jury Instructions for these offenses, which use the term "victim" to identify the person against whom the charged offenses are alleged to have been committed. *See* N.C.P.I.—Crim. 207.10 (2002); N.C.P.I.—Crim. 207.20 (2007). Defendant also concedes that defense counsel did not object to the court's use of this term in its instructions to the jury at trial, and further

admits that "when a judge calls a person 'a victim,' it does not mean that the judge believes the person to be a victim, nor would a juror understood [sic] this to be so." *See State v. Richardson*, 112 N.C. App. 58, 67, 434 S.E.2d 657, 663 (1993) ("The word 'victim' is included in the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges and is used regularly to instruct on the charges of first-degree rape and first-degree sexual offense."), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 132 (1994); *see also State v. Henderson*, 155 N.C. App. 719, 722, 574 S.E.2d 700, 703 ("[I]t is clear from case law that the use of the term 'victim' in reference to prosecuting witnesses does not constitute plain error when used in instructions."), *appeal dismissed and disc. review denied*, 357 N.C. 64, 579 S.E.2d 569 (2003).

Nevertheless, defendant urges this Court to conclude that the trial court's use of this term in its instruction was prejudicial in accordance with our decision in *State v. Walston*, __ N.C. App. __, __, __, 747 S.E.2d 720, 726, 728 (2013) (concluding the trial court's use of the term "victim" in its instruction to the jury was prejudicial error). However, Walston is distinguishable from the present case. First, in Walston, the trial court denied defendant's request to modify the pattern jury instructions to use the term "alleged victim" in place of the term "victim," and "objected repeatedly to the proposed instructions," *see id.* at __, 747 S.E.2d at 726–27, whereas, in the present case, defendant made no such request to modify the language in the instruction and did not raise any objection to the use of this term at trial. Next, in *Walston*, since conflicting testimony was presented from the accusing witnesses and from defendant, who testified on his own behalf, there were disputed issues of fact as to whether the sexual offenses even occurred, *see id.*, whereas, here, there were no such conflicts in the testimony presented. Moreover, while this Court in *Walston* concluded that the trial court committed prejudicial error, *see id.* at __, 747 S.E.2d at 728, this defendant makes no specific argument that he has suffered any prejudice as a result of the trial court's uncontested use of the term "victim" in its jury instructions. For these reasons, we find Walston inapplicable to the present case, and hold that the trial court did not commit plain error when it used the term "victim" in its instruction to the jury on the offenses of first- and second-degree rape.

Finally, defendant contends the trial court erred because it allowed the prosecutor to "repeatedly refer[] to the complainants as 'victims' " during his closing argument, and did not intervene *ex mero motu* to prevent the prosecutor from expressing his "personal opinion concerning the guilt of the defendant or the veracity of [the] witness[es]."

"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002). "Under this standard, '[o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.' " *State v. Anthony*, 354 N.C. 372, 427, 555 S.E.2d 557, 592 (2001) (alteration in original) (quoting *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996)), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002). " '[D]efendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair.' " *Id.* at 427–28, 555 S.E.2d at 592 (alteration in original) (quoting *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999)).

In the present case, defendant challenges the prosecutor's use of the word "victim" when he described the elements of the charged offenses, and when he stated that "these first incidents of abuse by the [d]efendant is [sic] a pattern of abuse that continued for years in this household . . . involving multiple victims," and that "the third victim who testified, . . . there's a couple of sets of charges involving her testimony and the evidence in her case." Defendant suggests, in his argument on this issue, that the prosecutor's comments in this case are analogous to comments made by the prosecutors in *State v. Smith*, 279 N.C. 163, 165–67, 181 S.E.2d 458, 459–61 (1971) (ordering a new trial where the prosecutor called the defendant a "Liar," and told the jury: "I don't care who they bring in here . . . to say to you that his character and reputation in the community in which he lives is good. I tell you it isn't worth a darn. . . . I don't believe a living word of what he says about this case." (omissions in original)), and *State v. Locklear*, 294 N.C. 210, 214–15, 218, 241 S.E.2d 65, 68, 70 (1978) (ordering a new trial where the prosecutor told a defense witness during cross-examination, "[Y]ou are lying through your teeth and you know you are playing with a perjury count; don't you?," and concluded the exchange with the witness by saying, "Now, think fast, Leonard. Think up a good story while you are up there."). However, defendant has failed to establish that the remarks spoken by the prosecutor in the present case approach the level of gross impropriety illustrated by the remarks made by the prosecutors in *Smith* and *Locklear*. Because defendant has not shown that the prosecutor's comments "so

infected [this] trial with unfairness that they rendered [his] conviction[s] fundamentally unfair," *see Davis,* 349 N.C. at 23, 506 S.E.2d at 467, we overrule this issue on appeal.

No Error.

Judges STEELMAN and DILLON concur.